**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 21-cv-01763-CMA-NYW

JACOB D. OAKLEY,

        Plaintiff,

v.

DEAN WILLIAMS,
INMATE BANKING – DEFENDANTS TO BE DETERMINED,
OFFENDER ACCOUNTS – DEFENDANTS TO BE DETERMINED, and
BRADLEY DUCA,[1]

        Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Nina Y. Wang

        This matter comes before this court on the Motion to Dismiss Complaint Under

Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (the "Motion" or "Motion to Dismiss") filed by

Defendants Dean Williams, Inmate Banking, Offender Accounts, and Bradley Duca[2]

(collectively, "Defendants") on September 14, 2021.   [Doc. 18].[3]   The undersigned

considers the Motion pursuant to 28 U.S.C. § 636(b), the Order Referring Case dated

---

[1] Mr. Oakley named the CDOC Controller "of the State" as a Defendant in this case. [Doc. 1 at 1].  This Defendant was identified by the Colorado Department of Corrections, Office of Legal Services as Bradley Duca in its Waiver of Service.  [Doc. 7].  Accordingly, the Clerk of the Court is **ORDERED** to **AMEND** the caption to identify Bradley Duca as the fourth Defendant in this action.

[2] *See supra* n.1.

[3] This court uses the convention [Doc. __] to refer to docket entries in the District of Colorado's Electronic Case Filing ("ECF") system.  When the court refers to the ECF docket number for a different action, it uses the convention [ECF No. ___].  For purposes of clarity, the court cites to the Parties' briefs using the page numbers generated by the ECF system, rather than the page numbers assigned by the Parties.

July 29, 2021 [Doc. 8], and the Memorandum dated September 16, 2021.  [Doc. 20].
Upon review of the Motion and the applicable case law, this court respectfully
**RECOMMENDS** that the Motion to Dismiss be **GRANTED**.

## BACKGROUND

The court draws the following facts from the Prisoner Complaint (the "Complaint")
[Doc. 1] and presumes they are true for purposes of the Motion to Dismiss.  Plaintiff Jacob
D. Oakley ("Plaintiff" or "Mr. Oakley") is an inmate currently incarcerated within the
Colorado Department of Corrections ("CDOC").  *See* [Doc. 1 at 1, 4].  Mr. Oakley alleges
generally that Defendants have made or authorized charges to his prison financial
account, without notice to Plaintiff and without Plaintiff's permission, which have caused
Plaintiff's account to have an increased deficit balance.  [*Id.* at 5, ¶¶ 3-4].  Mr. Oakley
alleges that every time he receives a deposit into his prison account, his bank statement
reflects that the deposits are "subtracted in whole and applied towards the Negative
Balance for the entire amount of the deposit."  [*Id.* at ¶ 7].  In addition, he suggests that
Defendants have used state funds to pay court costs related to Plaintiff's "court cases"
and have "loan[ed] [Plaintiff] money" to purchase canteen items, which have created
further debt transactions without Plaintiff's permission.  [*Id.* at 5-6, ¶ 7].

As to specific instances of wrongful conduct, Mr. Oakley asserts that the CDOC
billed him twice for the "same payment transaction on . . . app-case 260530" [sic].  [*Id.* at
6, ¶ 9].  He states that on an unspecified date, he received his "1 eip"[4] of $1,200, and that
"payment reflects being made [sic] in the amount of 1200/1400," but that "that case [was]

---

[4] Mr. Oakley does not explain what an "eip" is, and the court is unable to ascertain the
meaning from Plaintiff's filing.

already part of the Negative Balance total." [*Id.*]. Thus, Mr. Oakley alleges that, even though he paid this debt, the CDOC "added the debt amount back." [*Id.*].

Mr. Oakley also appears to allege that, as of September 13, 2012, he had a maximum debt balance of "no more than -3783.81 or -2720.49" and that, aside from the estimated maximum total charges for hygiene products, legal and personal mail, and photocopies of legal documents, which would amount to $325, he "acquired no more debt to CDOC." [*Id.* at 7, ¶ 11]. Mr. Oakley states that he received "at a minimum" $6,500 in deposits from 2005 to 2021 and that the CDOC took 90 to 100 percent of his total deposits and applied the money towards the negative balance in his account. [*Id.*]. Plaintiff appears to suggest that, based on his deposits, he should no longer have a negative balance in his prison account. [*Id.*].[5] Plaintiff alleges that he disputed the discrepancies in his account to CDOC officials and was ignored. [*Id.* at 6, ¶ 10].

Finally, Mr. Oakley alleges that the conduct alleged in the Complaint is contrary to CDOC policy. According to Plaintiff, pursuant to CDOC Administrative Regulations 200-02 and 150-01, "there are only two situations in which [the] CDOC may charge an [inmate's] account" in a manner which results in a debt obligation: the CDOS may cause an inmate may go into a deficient balance in his or her prison account only (1) to cover the cost of legal or personal mail; and (2) if the inmate has been convicted of a Class II misdemeanor for damage to state property. [*Id.* at 4, ¶ 1]. Plaintiff alleges that, aside from these two specific situations, there are no other circumstances which allow the CDOC to indebt an inmate's account. [*Id.* at 5, ¶ 2].

---

[5] Mr. Oakley's Complaint contains some blank spaces where it appears he intended to put dollar amounts, *see, e.g.*, [Doc. 1 at 7, ¶ 11], which hinders the court's ability to clearly ascertain his allegations.

Mr. Oakley initiated this action on June 28, 2021, *see generally* [*id.*], and the Honorable Gordon P. Gallagher granted Mr. Oakley leave to proceed in this case *in forma pauperis*. [Doc. 4]. In his Complaint, Mr. Oakley primarily alleges a violation of his due process rights, [Doc. 1 at 4], asserting that he has a fundamental right to, and a protected liberty interest in, paying off his own debts with his own money, [*id.* at 7, ¶¶ 5-6], and a fundamental right and a protected liberty interest "to not rely on the state to pay off [his] debts for [him]." [*Id.* at 8, ¶ 7]. In addition, Mr. Oakley requests that the court "liberally construe" his Complaint to state any claim for relief under:

1. Due process,

2. substantive due process,

3. Violations of the Tucker/little Tucker Act,

4. [various] statutes of fraud(s)/species of frauds under the UCC provisions as well as [Title] 11, 12, 31 U.S.C. and their state counterparts, I assert fraud is attached to all claim(s).

5. violations of state and Federal Banking codes, and codes that regulate Financial transactions under title 11, 12, 31 U.S.C.

6. claims against any and all Negotiable Instruments under the UCC that I did not personally sign and authorize, [and]

7. violation(s) of [various] antitrust laws, [Sherman] Act, and all related statutes and codes, in the interest of justice and Fundamental fairness.

[*Id.* at 12, ¶ 18]. Mr. Oakley seeks injunctive relief as well as compensatory, punitive, and nominal damages. [*Id.* at 10, 12].

Defendants filed the instant Motion to Dismiss on September 14, 2021. [Doc. 18]. Defendants seek to dismiss Plaintiff's claims in their entirety, arguing that (1) Plaintiff's claims are barred by the statute of limitations; (2) Plaintiff's claims are barred by the doctrine of claim preclusion; (3) Plaintiff's due process claims under the Fourteenth

Amendment fail to state a claim; (4) Plaintiff has failed to allege the personal participation of Defendants; and (5) Defendants are entitled to qualified immunity. *See generally* [*id.*]. On September 17, 2021, this court ordered Plaintiff to respond to the Motion to Dismiss by October 18, 2021. [Doc. 21]. After Plaintiff requested an extension of time to respond, *see* [Doc. 24], the court extended Plaintiff's response deadline to December 2, 2021. [Doc. 26]. Despite this extension, Mr. Oakley did not respond to the Motion to Dismiss, and the time for filing a response has elapsed. Because the Motion to Dismiss is ripe for recommendation, I now turn to Defendants' arguments.

## LEGAL STANDARDS

### I.     Fed. R. Civ. P. 12(b)(6)

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). Nevertheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (holding that pro se litigants cannot rely on conclusory, unsubstantiated allegations to survive a 12(b)(6) motion). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of

the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claim(s) "across the line from conceivable to plausible").  The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed."  *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## II.    Pro Se Pleadings

In applying the above principles, this court is mindful that Mr. Oakley proceeds pro se and the court thus affords his papers and filings a liberal construction.  *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).  But the court cannot and does not act as his advocate, *Hall*, 935 F.2d at 1110, and applies the same procedural rules and substantive law to Plaintiff as to a represented party.  *See Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 n.2 (10th Cir. 2008); *Dodson v. Bd. of Cty. Comm'rs*, 878 F. Supp. 2d 1227, 1236 (D. Colo. 2012).

## ANALYSIS

## I.    Plaintiff's Claims

As set forth above, Plaintiff seeks to raise claims under a number of various legal sources.  [Doc. 1 at 12, ¶ 18].  Liberal construction of pro se pleadings "means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."  *Hall*, 935 F. 2d at 1110.  For purposes of clarity, the court first parses the exact contours of Plaintiff's claims before turning to Defendants' arguments advocating for dismissal of those claims.

Construing the Complaint liberally, Mr. Oakley seeks relief based on: (1) due process; (2) substantive due process; (3) violations of the Tucker Act and the Little Tucker Act; (4) the statute of frauds; (5) Titles 11, 12, and 13 of the United States Code and "their state counterparts;" (6) violations of state and federal banking codes "and codes that regulate financial transactions under title 11, 12, 31 USC;" (7) negotiable instruments under the Uniform Commercial Code ("UCC"); (8) violations of "various" antitrust laws; (9) the Sherman Act; and (10) "all related statutes and codes." [Doc. 1 at 12, ¶ 18]. The court addresses each asserted basis for relief below.

***Section 1983***. 42 U.S.C. § 1983 "provides a federal civil remedy for the deprivation of any rights, privileges, or immunities secured by the Constitution by any person acting under color of state law." *McCarty v. Gilchrist*, 646 F.3d 1281, 1285 (10th Cir. 2011). The Fourteenth Amendment Due Process Clause states that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law," U.S. Const. amend. XIV, § 1, and provides for two different types of claims: procedural due process claims and substantive due process claims. "Procedural due process ensures the state will not deprive a party of property without engaging fair procedures to reach a decision, while substantive due process ensures the state will not deprive a party of property for an arbitrary reason regardless of the procedures used to reach that decision." *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000). Here, Mr. Oakley states both a claim for "[d]ue process" and "substantive due process." [Doc. 1 at 12, ¶ 18]. The court construes the Complaint as asserting two Fourteenth Amendment claims under § 1983—one asserting a violation of procedural due process and the other asserting a violation of substantive due process.

***The Sherman Act***.  With respect to Mr. Oakley's attempt to raise a claim under the Sherman Act, 15 U.S.C. § 1 *et seq*., Mr. Oakley does not indicate which section of the Sherman Act he believes Defendants have violated.  *See* [Doc. 1 at 12, ¶ 18].  Section 1 of the Sherman Act provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States . . . is declared to be illegal."   15 U.S.C. § 1.  Moreover, Section 2 "makes it illegal to 'monopolize, or attempt to monopolize, or combine or conspire . . . to monopolize any part of the trade or commerce.'"  *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1231 (10th Cir. 2017) (quoting 15 U.S.C. § 2).  Because the court can ascertain from the Complaint that Mr. Oakley seeks relief under the Sherman Act, the court will liberally the Complaint as asserting a violation of either section of the Sherman Act.

***The Tucker Act and the Little Tucker Act***.   Next, Mr. Oakley seeks relief for violations of the Tucker Act and the Little Tucker Act.  [Doc. 1 at 12, ¶ 18].  However, "[t]he Little Tucker Act and its companion statute, the Tucker Act, . . . do not themselves 'creat[e] substantive rights,' but 'are simply jurisdictional provisions that operate to waive sovereign immunity for claims premised on other sources of law.'"  *United States v. Bormes*, 568 U.S. 6, 10 (2012) (quoting *United States v. Navajo Nation*, 556 U.S. 287, 290 (2009)); *see also Whiskers v. United States*, 600 F.2d 1332, 1334-35 (10th Cir. 1979).  Indeed, the Little Tucker Act states:

> The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of . . . [a]ny other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1346(a)(2).  And under the Tucker Act, "the Court of Federal Claims has concurrent jurisdiction with the federal district courts over the categories of claims against the United States described in § 1346(a)(2)."  *Brown v. United States*, 384 F. App'x 815, 819 n.1 (10th Cir. 2010) (unpublished) (citing 28 U.S.C. § 1941).  Because the Tucker Act and the Little Tucker Act do not provide any enforceable substantive rights, the court does not construe Plaintiff's Complaint as requesting any relief pursuant to the Tucker Act or the Little Tucker Act.

*The Uniform Commercial Code*.  Next, Mr. Oakley asserts "claims against any and all Negotiable Instruments under the UCC that [he] did not personally sign and authorize."  [Doc. 1 at 12, ¶ 18].  The UCC "is not federal law," *Motorola, Inc. v. Perry*, 917 F. Supp. 43, 48 n.5 (D.D.C. 1996), and alleged violations of the UCC thus "raise questions of state law."  *Brown v. Countrywide Home Loans*, No. 09-cv-12359, 2009 WL 10737217, at *1 (E.D. Mich. Aug. 17, 2009).  "Article 3 of the [Colorado] UCC governs the issuance, transfer, enforcement, and discharge of negotiable instruments."  *Liberty Mortg. Corp. v. Fiscus*, 379 P.3d 278, 281 (Colo. 2016); *see also* Colo. Rev. Stat. §§ 4-3-101 *et seq*.  A negotiable instrument is

> an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:
>
> (1)   Is payable to bearer or to order at the time it is issued or first comes into possession of a holder;
>
> (2)   Is payable on demand or at a definite time; and
>
> (3)   Does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain (i) an undertaking or power to give, maintain, or protect collateral to secure payment, (ii) an authorization or power to the holder to confess judgment or realize on

or dispose of collateral, or (iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor.

Colo. Rev. Stat. § 4-3-104(a)(1)-(3).

The court has closely reviewed Plaintiff's Complaint and concludes that, even construing this filing liberally, it cannot ascertain the relief Mr. Oakley seeks with respect to "claims against any and all Negotiable Instruments under the UCC." While Mr. Oakley generally alleges that he received "deposits" in the amount of $6,500 from 2005 to 2021, Mr. Oakley provides no factual allegations which could form a basis for a recognizable claim; moreover, there are no allegations even identifying any "negotiable instrument" in this case. *See* [Doc. 18]. While the court must, and does, construe Mr. Oakley's Complaint liberally, the court may not assume that a plaintiff can prove facts that he has not alleged or that a defendant has violated laws in ways that a plaintiff has not alleged. *See Gallagher v. Shelton*, 587 F.3d 1063, 1067 (10th Cir. 2009) ("[The court's] role is not to act as [pro se litigant's] advocate"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) ("The court will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues.") (internal citation omitted). Because there is no factual or legal basis for a claim arising out of the Colorado UCC, the court does not construe Mr. Oakley's Complaint as asserting such a claim.[6]

---

[6] Even if the court did construe the Complaint as asserting such a claim, because the court recommends dismissal of all of Plaintiff's federal claims, the court would recommend that the court decline to exercise supplemental jurisdiction over any Colorado UCC claim. *See Bauchman ex rel. Bauchman v. W. High Sch.*, 132 F.3d 542, 549 (10th Cir. 1997) ("If federal claims are dismissed before trial, leaving only issues of state law, 'the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.'") (quoting *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988)).

***Statute of Frauds***.  In addition, Mr. Oakley seeks relief based on the statute of frauds.  [Doc. 1 at 12, ¶ 18].  But under Colorado law, the statute of frauds is an affirmative defense—not a separate cause of action.  *See Premier Farm Credit, PCA v. W-Cattle, LLC*, 155 P.3d 504, 525 (Colo. App. 2006) (Carparelli, J., concurring) ("[T]he statute of frauds does not provide the basis for a claim, but a defense against a claim seeking enforcement of an oral agreement.").  For this reason, the court does not construe the Complaint as asserting any claim arising under the statute of frauds.

***General Statutes and Codes***.  Finally, to the extent that Plaintiff seeks relief for "violations of state and federal banking codes," "codes that regulate financial transactions," Titles 11, 12, 13, or 31 of the United States Code, or "all related statutes and codes," the court does not construe Plaintiff's Complaint as raising any additional claims.  Although Plaintiff proceeds pro se, he must nevertheless comply with the Federal Rules of Civil Procedure, which require that a plaintiff provide a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Courts in this District have interpreted the requirements of Rule 8 to include identifying the specific legal basis for each claim.  *See, e.g., Wolf v. [No Defendants Named]*, No. 11-cv-02185-WYD-CBS, 2011 WL 4973667, at *3 (D. Colo. Sept. 23, 2011), *report and recommendation adopted sub nom. Wolf v. Pub. Tr. of Gilpin Cty.*, 2011 WL 4972081 (D. Colo. Oct. 19, 2011); *see also Polovino v. Int'l Bhd. of Elec. Workers, AFL-CIO*, No. 15-cv-023-JHP-PJC, 2015 WL 4716543, at *4 (N.D. Okla. Aug. 7, 2015) ("[A] complaint must specify the legal basis for any claim.").

While the court acknowledges that Plaintiff is not a lawyer and thus may not be familiar with the contours of banking codes or other regulatory financial statutes, "the court

cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). The court finds that merely asserting a claim based on all state or federal banking statutes is insufficiently specific to meet the requirements of Rule 8. *See Jiron v. Colorado*, No. CIV 21-0084 JB/KBM, 2021 WL 1720905, at *4 (D.N.M. Apr. 30, 2021) (finding that a plaintiff failed to comply with Rule 8 where the plaintiff made "oblique reference to . . . the United States Code, to the Uniform Commercial Code, [and] to anti-trust statutes" because it was "impossible to 'discern a factual and legal basis' for [his] claims"); *cf. Christensen v. Graco Fishing & Rental Tools, Inc.*, No. 2:20-cv-00888-HCN-JCB, 2021 WL 3010096, at *6 (D. Utah May 18, 2021) (recommending dismissal where a plaintiff stated his claim was based upon "Utah Statutes" but where he had failed to reference any specific legal basis for the claim).

## II. Statute of Limitations

Having determined the exact claims asserted in the Complaint, the court turns to the substantive arguments in the Motion to Dismiss. Defendants first argue that Plaintiff's claims should be dismissed because they are barred by the applicable statutes of limitations. [Doc. 18 at 5]. "[A]lthough a statute of limitations bar is an affirmative defense, it may be resolved on a Rule 12(b)(6) motion to dismiss 'when the dates given in the complaint make clear that the right sued upon has been extinguished.'" *Radloff-Francis v. Wyo. Med. Ctr., Inc.*, 524 F. App'x 411, 413 (10th Cir. 2013) (unpublished) (quoting *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n. 4 (10th Cir. 1980)).

With respect to Plaintiff's Fourteenth Amendment claims arising under § 1983, "[l]imitations periods in § 1983 suits are to be determined by reference to the appropriate

state statute of limitations." *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006) (internal citation omitted). Under Colorado law, the statute of limitations for § 1983 claims is two years "from the time the cause of action accrued." *Id.* (internal citation omitted); *see also* Colo. Rev. Stat. § 13-80-102. A cause of action accrues when "the plaintiff knows or should have known that his or her constitutional rights have been violated." *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1154 (10th Cir. 1998) (internal citation omitted). In addition, insofar as Plaintiff raises a claim under the Sherman Act, the "statute of limitations for federal antitrust claims is four years." *XY, LLC v. Trans Ova Genetics, LC*, No. 13-cv-00876-WJM-NYW, 2015 WL 1433225, at *2 (D. Colo. Mar. 26, 2015), *aff'd*, 890 F.3d 1282 (Fed. Cir. 2018) (quoting *Champagne Metals v. Ken-Mac Metals, Inc.*, 458 F.3d 1073, 1088 (10th Cir. 2006)).

Defendants argue that, because Mr. Oakley alleges that he has received at least $6,500 in deposits since 2005, states that "debt transactions were improperly created in his name 'from the beginning,'" and seeks an injunction dating back to 2005, Mr. Oakley "would have seen deductions to his banking account and known of his complained of injury as early as 2005, yet did not file his Complaint until June 28, 2021." [Doc. 18 at 6]. In addition, Defendants note that the two specific transactions referenced in the Complaint allegedly occurred on April 26, 2007 and September 13, 2012. [*Id.*]; *see also* [Doc. 1 at 7, ¶ 9; *id.* at 9, ¶ 18]. For these reasons, Defendants argue that Plaintiff's claims are time-barred.

The court agrees with Defendants that, generally, the two-year statute of limitations for § 1983 claims and the four-year statute of limitations for antitrust claims are likely long expired insofar as Plaintiff challenges any conduct occurring in 2005, 2007, or 2012. With

that said, the court cannot conclude the Complaint "make[s] clear" that the statute of limitations has run on the entirety of the conduct challenged in the Complaint. *Radloff-Francis*, 524 F. App'x at 413. Admittedly, the Complaint is, for the most part, devoid of any specific factual allegations pertaining to the dates on which the challenged conduct occurred. *See, e.g.*, [Doc. 1 at 6, ¶ 9]. But while the specific dates set forth by Plaintiff are years passed, the court notes that Mr. Oakley does allege that he received $6,500 in deposits "from 2005 – 2021" and that he seeks injunctive relief in the form of a "complete account research as to how [much] money [he] received from 2005 to 2021, to determine the precise amount overpaid." [*Id.* at 11, ¶ 17]. In addition, Mr. Oakley has attached to his Complaint two Statements of Account Activity which demonstrate withdrawals from his prison account occurring in 2020 and 2021 which increased the negative balance in the account. [*Id.* at 18-19].[7]

Construing these allegations liberally and in Plaintiff's favor, as the court must, the court finds that Plaintiff's Complaint could be construed as alleging that, as recently as 2020 or 2021—the year in which the Complaint was filed—Defendants wrongfully created debts in Plaintiff's prison account without his permission.[8] And because it is presently

---

[7] At the motion-to-dismiss stage, "the court may consider materials beyond the complaint if the documents are central to the plaintiff's claims, referred to in the complaint, and the parties do not dispute their authenticity." *Cahey v. Int'l Bus. Machines Corp.*, No. 20-cv-00781-NYW, 2020 WL 5203787, at *3 (D. Colo. Sept. 1, 2020).

[8] The court notes that generally, allegations which do not indicate when challenged conduct occurred may fail to meet the requirements of Rule 9(b) or Rule 12(b)(6). *See, e.g., Sec. Sys., Inc v. Alder Holdings, LLC*, 421 F. Supp. 3d 1186, 1195 (D. Utah 2019); *Baldauf v. Garoutte*, No. 03-cv-01104-REB-CBS, 2007 WL 2697445, at *8 (D. Colo. Sept. 11, 2007), *aff'd*, 295 F. App'x 294 (10th Cir. 2008) (unpublished). However, the court's inquiry in determining whether the statute of limitations has run does not implicate these concerns, as the only question before the court in this analysis is whether it is "clear," based on the Complaint, that the statute of limitations has run. *Radloff-Francis*, 524 F. App'x at 413. The court does not find such clarity here.

unclear, based on the Complaint, that the statute of limitations has passed with respect to the entirety of the allegations in the Complaint, the court declines to dismiss Plaintiff's claims based on the statute of limitations.[9]  *See Escobar v. Reid*, 668 F. Supp. 2d 1260, 1289 (D. Colo. 2009) (where the court could not "definitively determine the applicability of the statute of limitations" period because plaintiff provided no dates in the complaint, the claims could not be dismissed on statute-of-limitations grounds); *Oakley v. Raemisch*, No. 14-cv-03000-CMA-MJW, 2016 WL 786734, at *3 (D. Colo. Feb. 2, 2016), *report and recommendation adopted*, 2016 WL 759170 (D. Colo. Feb. 26, 2016) ("Plaintiff's Complaint does not state the specific dates on which restitution orders were entered against him; accordingly, the Complaint does not, on its face, establish the statute of limitations.").

## III.     Claim Preclusion

Next, Defendants argue that dismissal is warranted under the doctrine of *res judicata*, or "claim preclusion."  [Doc. 18 at 6].[10]  This doctrine "prevent[s] a party from litigating a legal claim that was or could have been the subject of a previously issued final judgment."  *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005).  Defendants cite three prior cases filed by Mr. Oakley which they argue bar Plaintiff's present claims.  *See* [Doc. 18 at 7-9 (citing *Oakley v. Zavaras* ("*Oakley I*"), No. 09-cv-01991-WYD-KMT, 2011 WL 198405, at *1 (D. Colo. Jan. 20, 2011); *Oakley v. Raemisch* ("*Oakley II*"), No. 14-cv-03000-CMA-MJW, 2016 WL 786734 (D. Colo. Feb. 2, 2016); and *Oakley v.*

---

[9] There is no discussion in the Motion to Dismiss regarding the applicability of a "continuing violations" theory or a "repeated violations" doctrine.  *Cf. Hamer v. City of Trinidad*, 924 F.3d 1093, 1100 (10th Cir. 2019).

[10] For purposes of clarity, this court uses the term "claim preclusion" in instances where the applicable filings or cited authority may have referred to "*res judicata*."

*Raemisch* ("*Oakley III*"), 15CV24 (Colo. Dist. Ct., Pueblo Cty., filed Apr. 30, 2015))].

According to Defendants, Plaintiff's claims are "precluded by [this] prior duplicative litigation." [*Id.* at 9].

*Oakley I* and *Oakley II* were both brought by Mr. Oakley in this District. In *Oakley I*, Mr. Oakley sued, *inter alia*, the Executive Director of the CDOC and the Warden of the Colorado State Penitentiary ("CSP"), alleging that they had violated his due process rights by garnishing funds from his prison bank account to account for restitution orders resulting from "disciplinary convictions." 2011 WL 198405, at *1. At the pleading stage, the court found that Mr. Oakley had plausibly stated a due process claim. *Id.* at *4. However, summary judgment was ultimately granted in the defendants' favor on the due process claim, as the court found that Plaintiff had failed to establish a genuine issue of material fact concerning whether Plaintiff was afforded adequate process in the garnishment of his bank account funds because he was able to participate in numerous disciplinary hearings. *Oakley v. Richter*, No. 09-cv-01991-WYD-KMT, 2012 WL 263460, at *4-5 (D. Colo. Jan. 10, 2012), *report and recommendation adopted*, 2012 WL 263381 (D. Colo. Jan. 30, 2012).

In *Oakley II*, Plaintiff brought claims against the Executive Director of the CDOC in his official capacity, arguing that the CDOC's withdrawal of funds from his inmate account to pay for his court-ordered debts and debts owed to the CDOC was a violation of his due process rights. *See* 2016 WL 786734, at *1. The magistrate judge recommended that this claim be dismissed on the basis that Colorado law provides adequate post-deprivation remedies so as to comply with due process requirements, and the presiding

judge accepted this recommendation and dismissed Plaintiff's claim.  *Id.* at \*4; 2016 WL 759170, at \*1.

The third case on which Defendants rely was brought by Plaintiff in state court.  In *Oakley III*, Plaintiff asserted a single claim against the Executive Director of the CDOC in his official capacity, challenging the CDOC's (a) collection of restitution ordered via disciplinary proceedings, and (b) inclusion of "facility charges" owed by Mr. Oakley for damage to CDOC facilities in its calculation of restitution payments.  Mr. Oakley asserted that the CDOC's actions constituted a "taking" of his property without due process. *See* [Attach. 1, *Oakley III*, Prisoners Complaint [sic] (Colo. Dist. Ct., Pueblo Cty., Apr. 30, 2015)].   The state court granted the defendant's motion to dismiss and dismissed Plaintiff's claim with prejudice.  *See* [Attach. 2, Order Re Motion to Dismiss (Colo. Dist. Ct., Pueblo Cty., Sept. 9, 2015)].

Defendants argue that Mr. Oakley's current claims are duplicative of those asserted in *Oakley I*, *Oakley II*, and *Oakley III* because the prior cases "also involved issues related to . . . CDOC's debt collection practices related to [Plaintiff's] inmate banking account."  [Doc. 18 at 9].   Because the law applicable to Defendants' claim preclusion defense turns on whether the prior claim was brought in federal or state court, I consider the preclusive effect of Plaintiff's prior lawsuits in federal court (*Oakley I* and *II*) before turning to his prior state court action (*Oakley III*).

A.    **Federal Cases: *Oakley I* and *II***

In federal court, the defense of claim preclusion has three elements: "(1) a final judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits."  *Lenox*, 847 F.3d at 1239 (brackets

and internal quotation marks omitted).  Where these requirements are met, the claim is precluded "unless the party seeking to avoid preclusion did not have a 'full and fair opportunity' to litigate the claim in the prior suit.'"  *MACTEC*, 427 F.3d at 831 (quoting *Yapp v. Excel Corp.*, 186 F.3d 1222, 1226 n.4 (10th Cir. 1999)).

    ***Final Judgment***.  This court has previously determined that "[t]here can be no doubt that Plaintiff's causes of action in *Oakley I* and *II* were terminated by entry of final judgment."  *Oakley v. Williams*, No. 20-cv-01336-CMA-NYW, 2021 WL 4173908, at *16 (D. Colo. Feb. 2, 2021), *report and recommendation adopted*, 2021 WL 4170464 (D. Colo. Sept. 14, 2021) ("*Oakley IV*").[11]  The court reaches the same conclusion here: in *Oakley I*, summary judgment was granted in the defendant's favor on Mr. Oakley's due process claim concerning money removed from his inmate banking account, *see* 2012 WL 263460, at *5; 2012 WL 263381, at *1, and in *Oakley II*, Plaintiff's due process claim was dismissed for failure to state a claim upon relief could be granted.  *See* 2016 WL 786734, at *4; 2016 WL 759170; *see also Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981) ("The dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a judgment on the merits.") (quotation omitted).

    ***Identity of Parties***.  The second element of claim preclusion requires "identity of parties" or privity "between the parties in the first action and the parties named in the

---

[11] There are sufficient materials in the records of the United States District Court for the District of Colorado and the Colorado state court to resolve the issue of whether the first two elements of Defendants' claim preclusion defense are satisfied without converting the Motion to Dismiss to a motion for summary judgment.  *See* Fed R. Evid. 201; *Johnson v. Spencer*, 950 F.3d 680, 705 (10th Cir. 2020) (noting that it is "is unremarkable that courts frequently take judicial notice of prior judicial acts found in records and files when evaluating the merits of a purported claim-preclusion defense" without converting a motion to dismiss to a motion for summary judgment).

second action." *Carrillo v. Penn Nat'l Gaming, Inc.*, 172 F. Supp. 3d 1204, 1212 (D.N.M. 2016).  With respect to the claims against Defendant Williams—the Executive Director of the CDOC—in his official capacity, the identity of the parties in *Oakley I* and *II* and the instant action are identical, as the claims in *Oakley I* and *II* were asserted against Defendant Williams's predecessors.  *See Oakley I*, 2011 WL 198405, at *1; *Oakley II*, 2016 WL 786734, at *1.  Pursuant to Rule 25(d), officials sued in their official capacities are automatically substituted by their successors.  Fed. R. Civ. P. 25(d).

However, Mr. Oakley also sues Defendant Williams in his individual capacity, and also sues Defendant Duca, "Inmate Banking – Defendants to Be Determined," and "Offender Accounts – Defendants to Be Determined."  *See* [Doc. 1 at 1].  Defendants do not address whether the claims against the additional Defendants or the claim against Defendant Williams in his individual capacity have any impact on the identity of the parties for purposes of claim preclusion.  *See* [Doc. 18 at 9].  The Tenth Circuit has stated, however, that "[t]he general weight of authority appears to be that while government employees are in privity with their employer in their official capacities, they are not in privity in their individual capacities."  *Gonzales v. Hernandez*, 175 F.3d 1202, 1206 (10th Cir. 1999).  Accordingly, it would appear that these Defendants are not in privity with the former Executive Director defendants.  *See Atiya v. Salt Lake Cty.*, No. CIV 87-C-260J, 1991 WL 511072, at *4 (D. Utah Jan. 22, 1991), *aff'd*, 988 F.2d 1013 (10th Cir. 1993).  Because Defendants have the burden of establishing the elements of claim preclusion, *United States v. Osage Wind, LLC*, 871 F.3d 1078, 1087 (10th Cir. 2017), and have not demonstrated identity of parties between the instant case and the previous cases, the court finds that Defendants have not demonstrated that claim preclusion applies to

Plaintiff's claims against Defendant Williams in his individual capacity or the claims against Defendant Duca, Inmate Banking, or Offender Accounts.

***Identity of Cause of Action***. Because the court found identity of parties with respect to the claims against Defendant Williams in his official capacity, the court will briefly address whether this litigation constitutes the same cause of action as *Oakley I* or *II*. "Suits involve the same claim (or 'cause of action') when they 'arise from the same transaction,'" *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589, 1598 (2020) (quoting *United States v. Tohono O'odham Nation*, 563 U.S. 307, 316 (2011)), "or involve a 'common nucleus of operative facts.'" *Id.* (quoting Restatement (Second) of Judgments § 24, cmt. b, p. 199 (1982)).  The Tenth Circuit applies the "transactional" approach from § 24 of the Restatement (Second) of Judgments to determine what constitutes a "cause of action" for purposes of claim preclusion. *See Wilkes v. Wyo. Dep't of Emp. Div. of Labor Stds.*, 314 F.3d 501, 504 (10th Cir. 2002).  A "cause of action" includes all claims or legal theories of recovery that arise from the same transaction, event, or occurrence. *Id.* "What factual grouping constitutes a 'transaction,' and what groupings constitute a 'series,' are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, and whether they form a convenient trial unit." *Id.* (internal alteration and citation omitted).

As to identity of the causes of action, Defendants argue only that the "prior cases also alleged constitutional violations, include due process violations, pursuant to § 1983." [Doc. 18 at 10].  But although *Oakley I* and *Oakley II*, as well as the instant action, all allege violations of due process related to the CDOC's purported improper collection or

compounding of debts from Mr. Oakley's inmate account, this alone is insufficient—at the pleadings stage—to establish that the claims arise from the same cause of action for purposes of claim preclusion.   Certainly, Mr. Oakley's prior litigation history reveals numerous due process challenges to the CDOC's handling of his prison bank account. This broad description of his prior claims, however, is an insufficient basis for this court to conclude that any of the prior claims constitute the "same causes of action" as the instant matter.

Indeed, the court in *Oakley II* considered and rejected a similar argument for preclusion.  *See* 2016 WL 786734, at *4.  There, the defendant relied on *Oakley I* to argue that the case was "barred by claim preclusion . . . because Plaintiff has sued over funds in his inmate account in the past."  *Id.*  But the court in *Oakley II* found that "nothing in the Complaint specifically establishe[d] which restitution order Plaintiff [sought] to challenge," and because the defendant had not "submit[ted] any judicially noticeable documentation that would establish this fact," the court found that this affirmative defense would be better determined on summary judgment.  *Id.*

Here, too, there is insufficient information from which the court could conclude that the facts underlying the claims in *Oakley I* and *II* and the instant case assert claims arising out of the same "transaction, event, or occurrence."  *Wilkes*, 314 F.3d at 504.  As set forth above, the Complaint can be liberally construed as challenging the wrongful deduction of funds from Mr. Oakley's bank account occurring as recently as 2021—i.e., conduct that is alleged to have occurred after the decisions in *Oakley I* and *II*.  [Doc. 1 at 6, ¶ 11]. Although Defendants argue that the time frame at issue in this case "is the same timeframe alleged for improper withdrawals in the prior cases," [Doc. 18 at 9], a liberal

construction of Plaintiff's Complaint precludes such a finding.  *WildEarth Guardians v. Bernhardt*, 423 F. Supp. 3d 1083, 1095 (D. Colo. 2019) (where "the actions challenged in the case at hand occurred years after those in" the earlier case, claim preclusion did not apply).

At this juncture, this court does not have sufficient information from which it can definitively conclude that there is an identity of the causes of action here.  *Cf. Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018) ("[I]t is proper to dismiss a claim on the pleadings based on an affirmative defense . . . when the complaint itself admits all the elements of the affirmative defense by alleging the factual basis for those elements.").  Accordingly, this court declines to recommend dismissal of the official-capacity claim against Defendant Williams on the basis of claim preclusion arising from either *Oakley I* or *Oakley II*.

**B.     State Case: *Oakley III***

"A federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."  *Driskell v. Thompson*, 971 F. Supp. 2d 1050, 1067 (D. Colo. 2013) (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)) (internal brackets omitted).  The Supreme Court holds that claim preclusion "precludes the parties or their privies from relitigating issues that were or could have been raised in [the prior] action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (citation omitted); *see also MACTEC*, 427 F.3d at 831 ("The doctrine of [claim preclusion] will prevent a party from re-litigating a legal claim that was or could have been the subject of a previously issued final judgment."). "The Supreme Court of Colorado has adopted this rule, holding that [claim preclusion]

'bars litigation not only of all issues actually decided, but of all issues that might have been decided.'" *Klein v. Zavaras*, 80 F.3d 432, 434 (10th Cir. 1996) (quoting *Pomeroy v. Waitkus*, 517 P.2d 396, 399 (Colo. 1973)).

Under Colorado law, claim preclusion applies when four elements are met: "(1) the judgment in the prior proceeding was final; (2) the prior and current proceedings involved identical subject matter; (3) the prior and current proceedings involved identical claims for relief; and (4) the parties to the proceedings were identical or in privity with one another." *Gale v. Denver*, 500 P.3d 351, 354 (Colo. 2020).  "Defendants have the burden of setting forth facts sufficient to satisfy the elements of [claim preclusion]."  *Driskell*, 871 F. Supp. 2d at 1068 (citations omitted).

***Finality of Prior Action***.  Because the *Oakley III* court issued an order granting the defendant's motion to dismiss and dismissed Mr. Oakley's claim with prejudice, the court finds that *Oakley III* concluded by final judgment. *See Oakley IV*, 2021 WL 4173908, at *18.

***Identity of Subject Matter and Identity of Claim for Relief***.  In *Oakley III*, Plaintiff challenged specific actions of the CDOC, namely (a) collection of restitution ordered via disciplinary proceedings, and (b) inclusion of "facility charges" owed by Mr. Oakley for damage to CDOC facilities in its calculation of restitution payments.  Here, Mr. Oakley appears to more generally challenge the CDOC's alleged wrongful increase of his prison debt.  *Compare* [Attach. 1, *Oakley III* Complaint] *with* [Doc. 1 at 6, 7].  But even assuming that both *Oakley III* and this case involve identical subject matter, Defendants have not established that the prior and current proceedings involve identical claims for relief.  In *Oakley III*, Plaintiff appears to have challenged debts he incurred "between 2005 and up

to 2012 or 2013." [Attach. 1 at 1]. Here, the Complaint, liberally construed, challenges wrongful debts occurring between 2005 and 2021. [Doc. 1 at 6-7, ¶ 11]. Thus, this court cannot conclude at this juncture that the claims are bound by the same "'injury for which relief is demanded.'" *Loveland Essential Grp., LLC v. Grommon Farms, Inc.,* 318 P.3d 6, 10 (Colo. App. 2012).

*Identity or Privity of Parties*. For the reasons set forth above, because Mr. Oakley now sues Defendant Williams in his individual capacity and also adds additional Defendants in this action, and because Defendants have not addressed whether privity exists in these specific circumstances, the court finds that Defendants have failed to satisfy the final element of their claim preclusion defense. *Driskell*, 871 F. Supp. 2d at 1068. Because the court is not persuaded that Plaintiff's claims are appropriately barred by claim preclusion, it turns to Defendants' arguments under Rule 12(b)(6).

## IV.   Failure to State a Claim Under Rule 12(b)(6)

### A.   The Fourteenth Amendment

The Due Process Clause protects against the deprivation of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1. As set forth above, the Due Process Clause protects both procedural and substantive rights, and Plaintiff asserts both procedural and substantive due process claims. *See* [Doc. 1 at 12, ¶ 18]. The court addresses these claims in turn.

#### 1.   Procedural Due Process

The court "examine[s] procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the [government]; the second examines whether the procedures attendant upon that

deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). Thus, "[a] facially valid procedural-due-process claim is comprised of two elements: '(1) a constitutionally protected liberty or property interest, and (2) a governmental failure to provide an appropriate level of process.'" *Sutton v. Mikesell*, 810 F. App'x 604, 610-11 (10th Cir. 2020) (unpublished) (quoting *Citizen Ctr. v. Gessler*, 770 F.3d 900, 916 (10th Cir. 2014). "[T]he process due in any given instance is determined by weighing 'the private interest that will be affected by the official action' against the Government's asserted interest, 'including the function involved' and the burdens the Government would face in providing greater process." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). Relevant here, "Fourteenth Amendment due process guarantees pertaining to property are satisfied when an adequate, state postdeprivation remedy exists for deprivations occasioned by state employees." *Smith v. Colo. Dep't of Corr.*, 23 F.3d 339, 340 (10th Cir. 1994).

Defendants do not contest the fact that Mr. Oakley has a protected property interest in his prison bank account. *See* [Doc. 18 at 11]. Instead, Defendants appear to argue that Mr. Oakley fails to state a procedural due process claim because he has been afforded the appropriate level of post-deprivation process. [*Id.*]. They assert that Mr. Oakley "has had the opportunity to contest any erroneous assessments through the prison grievance process" and argue that Mr. Oakley has "not alleged or shown that the prison grievance program is inadequate to address erroneous assessments to his inmate account." [*Id.*].

The court respectfully disagrees with Defendants' assertion. Mr. Oakley does allege that he "sought the grievance process to resolve all of this," but states that he was

"ignored on all raised key issues presented."  [Doc. 1 at 12, ¶ 20].  He also alleges that he twice completed a request for account research but was "ignored completely."  [*Id.*]; *see also* [*id.* at 17, 20 (Mr. Oakley's requests for account research dated May 15 and 17, 2021)]. The court finds that Mr. Oakley has alleged facts suggesting that, because his submitted grievances were ignored, the grievance process was inadequate to comport with due process requirements.  *Cf. Hafed v. Fed. Bureau of Prisons*, No. 07-cv-01499-ZLW-KMT, 2009 WL 10690766, at *6 (D. Colo. Mar. 6, 2009) (recommending denial of motion to dismiss where the defendant argued that the plaintiff, prior to the imposition of prison restrictions, received appropriate process through an administrative review procedure, but where the plaintiff alleged that that procedure failed to give adequate due process protections because he did not receive notice of the factual basis for imposing the restrictions and that he was not provided an opportunity to be heard); *see also Boddie v. Connecticut*, 401 U.S. 371, 378 (1971) ("[D]ue process requires, at a minimum, . . . a meaningful opportunity to be heard.") (emphasis added).

Such allegations are not determinative, however, as to whether Mr. Oakley nevertheless had an adequate post-deprivation remedy for any alleged wrongdoing on the part of Defendants.  A number of courts have found that the state court system provides an adequate mechanism to challenge the conduct at issue in this case.  *See, e.g.*, *Stanley v. McMillian*, 594 F. App'x 478, 480 (10th Cir. 2014) (unpublished) (where the plaintiff challenged the confiscation of funds from his prison account, agreeing with "the district court that Plaintiff has not demonstrated the state court system would fail to provide constitutionally adequate post-deprivation process."); *Oakley II*, 2016 WL 786734, at *4 (finding that Plaintiff had an adequate post-deprivation remedy under Rule

106 of the Colorado Rules of Civil Procedure to challenge the garnishment of funds from his prison account).   Plaintiff's allegations that his grievances were ignored are thus insufficient to allege that he lacked an adequate post-deprivation remedy.  *See Rainey v. Morris*, No. 12-cv-00563-BNB, 2012 WL 769518, at *2 (D. Colo. Mar. 8, 2012) ("To the extent Mr. Rainey may be arguing that the DOC grievance procedure was not available to him because his grievances were ignored, the Court notes that Mr. Rainey also has an adequate remedy available to him in state court under state law."); *Sawyer v. Green*, 316 F. App'x 715, 717 (10th Cir. 2008) (unpublished) ("[E]ven if the grievance was indeed ignored, Sawyer could seek relief in state courts.").

       As set forth above, "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if an adequate post-deprivation remedy is available, *Smith*, 23 F.3d at 340, and a claim "is properly dismissed for failure to state a claim upon which relief can be granted" where the plaintiff "has not alleged that an adequate postdeprivation remedy was unavailable to him."  *Jimenez v. Martz*, No. 11-cv-00948-PAB-CBS, 2012 WL 976034, at *5 (D. Colo. Feb. 23, 2012), *report accepted*, 2012 WL 975753 (D. Colo. Mar. 21, 2012).  Mr. Oakley has already attempted to challenge the CDOC's handling of his prison account in state court, *see Oakley III*, which supports a finding that Plaintiff had an adequate state remedy.  Moreover, Mr. Oakley does not allege that this state court action, or state court litigation generally, is an inadequate post-deprivation remedy.  *See generally* [Doc. 1].  The fact that Plaintiff "did not obtain the relief he sought in the state court action does not demonstrate the state court remedy was unavailable or inadequate."  *Frazier v. Flores*, No. 13-cv-00891-BNB, 2013 WL 12064452,

at *2 (D. Colo. Dec. 3, 2013), *aff'd*, 571 F. App'x 673 (10th Cir. 2014) (unpublished); *cf.*

*Williams v. Carbajol*, No. 20-cv-02119-NYW, 2021 WL 5579114, at *13 (D. Colo. Nov. 30,

2021) (where the plaintiff challenged the deprivation of his property and state court and

lost, finding that the plaintiff could not state a Fourteenth Amendment claim because he

had an adequate post-deprivation state court remedy).

For these reasons, the court finds that Mr. Oakley has not sufficiently alleged "a

governmental failure to provide an appropriate level of process," as required to state a

procedural due process claim.   *Sutton*, 810 F. App'x at 610-11.   As such, the court

respectfully **RECOMMENDS** that the Motion to Dismiss be **GRANTED** to the extent it

seeks dismissal of Plaintiff's procedural due process claim and that this claim be

**DISMISSED without prejudice** as to all Defendants.[12]

### 2.    Substantive Due Process

"[T]he touchstone of due process is protection of the individual against arbitrary

action of government."   *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998).   In

addition to guaranteeing fair procedures, the Due Process Clause of the Fourteenth

Amendment "cover[s] a substantive sphere as well, barring certain government actions

regardless of the fairness of the procedures used to implement them."   *Dias v. City & Cty.*

*of Denver*, 567 F.3d 1169, 1181 (10th Cir. 2009) (quoting *Lewis*, 523 U.S. at 840)).   "[T]he

Supreme Court recognizes two types of substantive due process claims: (1) claims that

---

[12] Dismissal with prejudice is appropriate only when it is patently obvious the plaintiff cannot plead a plausible claim for relief and amendment would thus be futile.   *See Gee v. Pacheco*, 627 F.3d 1178, 1195 (10th Cir. 2010) (explaining that dismissal without prejudice to allow amendment of the complaint is appropriate where the plaintiff is "close to stating a claim but [is] missing some element that may not have occurred to him" (internal quotation marks omitted)).

the government has infringed a 'fundamental' right, . . . and (2) claims that government action deprived a person of life, liberty, or property in a manner so arbitrary it shocks the judicial conscience."   *Doe v. Woodard*, 912 F.3d 1278, 1300 (10th Cir. 2019) (citing *Washington v. Glucksberg*, 521 U.S. 702, 721-22 (1997) and *Lewis*, 523 U.S. at 846). The Tenth Circuit "appl[ies] the fundamental-rights approach when the plaintiff challenges legislative action, and the shocks-the-conscience approach when the plaintiff seeks relief for tortious executive action."   *Maehr v. United States Dep't of State*, 5 F.4th 1100, 1117 (10th Cir. 2021); *see also Woodard*, 912 F.3d at 1300.  Here, because Plaintiff challenges executive conduct, the shocks-the-conscience standard is appropriate.

Defendants raise no specific arguments as to Plaintiff's substantive due process claim.  *See generally* [Doc. 18].  However, "the court does not find that Defendants' failure to address each of the specific claims identified by this court is determinative of whether Plaintiff's claims should proceed."  *Williams*, 2021 WL 5579114, at *8 n.10.  In cases such as this one where the plaintiff has been granted leave to proceed *in forma pauperis*, *see* [Doc. 4], this court has an independent obligation to dismiss a cause of action "at any time" if the court determines that the action "is frivolous or malicious" or "fails to state a claim on which relief may be granted."  28 U.S.C. § 1915(e0(2)(B)(i)-(ii); *see also Jones v. Bock*, 549 U.S. 199, 214 (2007) (a court may *sua sponte* dismiss a claim for failure to state a claim in *in forma pauperis* cases).  Upon review of the Complaint, the court finds it must exercise its duty here.

A substantive due process claim may arise out of "certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them," *Zinermon v. Burch*, 494 U.S. 113, 125 (1990), but only for "the most egregious

official conduct [that] can be said to be arbitrary in the constitutional sense." *Williams v. Berney*, 519 F.3d 1216, 1220 (10th Cir. 2008); *see also Moore v. Guthrie*, 438 F.3d 1036, 1040 (10th Cir. 2006) ("The ultimate standard for determining whether there has been a substantive due process violation is whether the challenged government action shocks the conscience of federal judges."). Conscience-shocking behavior requires allegations of more than mere negligence, *see id.*, and "conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Lewis*, 523 U.S. at 849.

The conscience-shocking standard is difficult to define, *Moore*, 438 F.3d at 1041, but "[c]onduct that shocks the judicial conscience must be egregious and outrageous." *Est. of Carrigan v. Park Cty. Sheriff's Off.*, 381 F. Supp. 3d 1316, 1326 (D. Colo. 2019). To meet this high threshold, a plaintiff must show that "a government actor arbitrarily abused his authority or employed it as an instrument of oppression," *Hernandez v. Ridley*, 734 F.3d 1254, 1261 (10th Cir. 2013), and the challenged conduct must meet a "degree of outrageousness and magnitude of potential or actual harm [that is] truly conscience shocking." *Schwartz v. Booker*, 702 F.3d 573, 586 (10th Cir. 2012). In analyzing Plaintiff's claims, the court is mindful that "[d]eliberate indifference that shocks in one environment may not be so patently egregious in another," and "preserving the constitutional proportions of substantive due process demands an exact analysis of circumstances before any abuse of power is condemned as conscience shocking." *Lewis*, 523 U.S. at 850.

The court respectfully cannot conclude that Mr. Oakley has alleged any conscience-shocking conduct here. Generally, courts find that prison officials' control

over or deductions from an inmate's prison account do not shock the judicial conscience. *See, e.g.*, *Anderson v. Kline*, No. CIV.A. 04-3432KHV, 2005 WL 327148, at *4 (D. Kan. Feb. 10, 2005) ("Deducting outstanding fees and fines from an inmate trust account without a hearing before each deduction does not 'shock the conscience' of this federal judge.  Such conduct cannot be considered as abusive or outrageous."); *Norfleet v. Miller-Pickering*, No. 18-cv-0564-DRH, 2018 WL 3391016, at *7 (S.D. Ill. July 12, 2018) (recoupment of expenses from plaintiff's prison trust account did not shock the conscience); *Larkin v. Werholtz*, No. 07-3325-SAC, 2008 WL 852126, at *4 (D. Kan. Mar. 28, 2008) (recognizing that "[l]imitations on inmates' use and receipt of money while in prison are ordinary incidents of prison life and are well within the bounds of what a sentenced inmate may reasonably expect to encounter as a result of his or her conviction."); *cf. Sperry v. Werholtz*, No. CIV.A. 04-3125-CM, 2008 WL 4216110, at *3 (D. Kan. Sept. 12, 2008), *aff'd*, 321 F. App'x 775 (10th Cir. 2009) (prison regulation requiring prison wages be placed in mandatory savings account did not shock the conscience).  This is true even where, as here, Plaintiff alleges that the deductions were wrongfully made.  *Brown v. Colo. Dep't of Corr.*, No. 05-cv-01691-EWN-MEH, 2006 WL 2621668, at *4 (D. Colo. Sept. 12, 2006) ("Even if Defendants applied the deductions to an improper order of restitution, these actions are not conscience shocking, particularly when Defendants['] actions are for the purpose of furthering the state's interest in seeking restitution from Plaintiff for his criminal conduct."); *cf. Williams v. Gartrell*, No. CIV.A. 15-5609 MCA, 2015 WL 5110913, at *4 (D.N.J. Aug. 31, 2015) (allegations that prison guards stole or destroyed inmate's property did not shock the conscience).

While the court recognizes the seriousness of Plaintiff's allegations, the court cannot conclude that the allegations amount to a "degree of outrageousness and magnitude of potential or actual harm [that is] truly conscience shocking." *Schwartz*, 702 F.3d at 586. Because Mr. Oakley has not alleged that Defendants engaged in any conscience-shocking conduct, the court finds that Mr. Oakley has not stated a substantive due process claim against any Defendant. Accordingly, I respectfully **RECOMMEND** that Plaintiff's substantive due process claim be **DISMISSED without prejudice** as to all Defendants.[13]

### 3. Personal Participation

In the alternative, Defendants argue that Mr. Oakley has failed to allege the personal participation of any Defendant in the alleged deprivation of Mr. Oakley's due process rights and, for this reason, he fails to state any claim for damages against Defendants in their individual capacities. [Doc. 18 at 14]. Because the court finds that this provides an alternative basis for dismissal of Plaintiff's individual-capacity due process claims insofar as Plaintiff seeks monetary damages, the court briefly addresses this argument.

Personal participation is a fundamental element of any § 1983 claim, as the defendant's liability hinges on an assessment of the defendant's conduct and culpability. *See Pompeo v. Bd. of Regents of the Univ. of N.M.*, 852 F.3d 973, 982 (10th Cir. 2017); *A.M. v. Holmes*, 830 F.3d 1123, 1136 (10th Cir. 2016). To sufficiently allege a defendant's personal participation in a constitutional deprivation, the plaintiff must "allege an affirmative link between the alleged constitutional violation and the specific individual's

---

[13] *See supra* n.12.

involvement in that violation." *Stidham v. Peace Off. Standards and Training*, 265 F.3d 1144, 1156-57 (10th Cir. 2001). "Over time, the 'affirmative link' language has evolved to require three elements: (1) personal involvement, (2) sufficient causal connection, and (3) culpable state of mind." *Laurienti v. Bicha*, No. 14-cv-02592-NYW, 2016 WL 496047, at *12 (D. Colo. Feb. 9, 2016) (citing *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010)). "It is particularly important that plaintiffs make clear exactly *who* is alleged to have done *what* to *whom*, as distinguished from collective allegations." *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013).

Mr. Oakley asserts several generalized allegations which attribute conduct to "the CDOC," *see, e.g.*, [Doc. 1 at 5, ¶¶ 3, 6; *id.* at 6, ¶¶ 8-9; *id.* at 7, ¶¶ 1-2)], but fails to allege the personal participation of any Defendant insofar as they are sued in their individual capacities. *See generally* [*id.*]. At best, he alleges that he wrote letters to Defendants and that these letters were ignored. [*Id.* at 10, ¶¶ 12-13]. But Plaintiff's constitutional claims are not based on the alleged disregard of letters—rather, they are based on the alleged improper withdrawals from his prison account. [*Id.* at 4 ("The CDOC violated by due process right by creating more debt transactions against me than I did not create nor [incur] myself.")]. Moreover, the "denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983." *Gallagher*, 587 F.3d at 1069. Because personal participation is an essential element of a § 1983 claim, and because Mr. Oakley has not sufficiently alleged facts demonstrating the personal participation of any Defendant, the court finds

that Mr. Oakley cannot state a claim as to individual liability for any Defendant, which is a separate basis for dismissal of these claims.[14]

### B.   The Sherman Act

As set forth above, this court construes Plaintiff's Complaint liberally to assert a claim pursuant to either section of the Sherman Act.  Defendants do not address or raise any arguments with respect to this claim, construing Plaintiff's Complaint as only raising claims under the Fourteenth Amendment.  *See generally* [Doc. 18].  For the reasons set forth above, the court finds it appropriate to undertake its independent obligation under § 1915 and assess the sufficiency of Plaintiff's Sherman Act claim.

"[T]o state a claim for a Sherman Act § 1 violation, 'the plaintiff must allege facts which show: the defendant entered a contract, combination or conspiracy that unreasonably restrains trade in the relevant market.'"  *Full Draw Prods. v. Easton Sports, Inc.*, 182 F.3d 745, 756 (10th Cir. 1999) (quoting *TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1027 (10th Cir. 1992)).  Moreover, to state a claim under Section 2 of the Sherman Act, "a plaintiff must allege (1) that the defendant has engaged in predatory or anticompetitive conduct (2) with the specific intent to monopolize, and (3) that such conduct created a dangerous possibility of achieving monopoly power."  *GDHI Mktg. LLC v. Antsel Mktg. LLC*, 416 F. Supp. 3d 1189, 1205 (D. Colo. 2019).

---

[14] Given these conclusions, the court does not address Defendants' remaining argument that they are entitled to qualified immunity against Plaintiff's individual-capacity claims. [Doc. 18 at 15].  Should the presiding judge disagree with this court's recommendation of dismissal as to the § 1983 claims, the court is prepared to issue a supplemental recommendation addressing the qualified-immunity argument.

The court finds that the Complaint fails to state a claim for a violation of either section of the Sherman Act.  For example, the Complaint contains no allegations that any Defendant entered into a "contract, combination or conspiracy," nor does Plaintiff identify any "market" within which trade has purportedly been restrained.  *See generally* [Doc. 1]. Additionally, the Complaint contains no allegations suggesting that Defendants had any intent to monopolize or that their alleged conduct—making unauthorized deductions from Plaintiff's bank account—created any possibility of achieving monopoly power.   [*Id.*]. Simply put, the allegations in the Complaint do not implicate "the national interest in a competitive economy," which interest the Sherman Act is designed to protect.  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.* (1985).  Because Mr. Oakley's Complaint does not contain any factual allegations from which the court could construe a plausible claim under the Sherman Act, the court respectfully **RECOMMENDS** that, to the extent Mr. Oakley's Complaint can be construed as asserting a claim under the Sherman Act, such claim be **DISMISSED with prejudice**.[15]

## V.    Defendants' Request for a Strike

Finally, Defendants argue that if the presiding judge grants their Motion to Dismiss, Mr. Oakley "should be assessed a strike pursuant to section 13-17.5-101, C.R.S."  [Doc. 18 at 15].  This statutory section contains a legislative declaration that it is necessary to

---

[15] The court finds it appropriate to recommend dismissal with prejudice of the Sherman Act claim, as the court finds that any attempt at amendment of this claim would be futile. *See GDHI Mktg.*, 416 F. Supp. 3d at 1199 ("The Sherman Act was enacted in 1890 to curb the monopolistic tendency of trusts and combinations of businesses 'organized and directed to control the market by suppression of competition.' . . . It does not focus on 'the vindication of general notions of fair dealing,' but on the 'protection of competition or prevention of monopoly.'") (quoting *Apex Hosiery Co. v. Leader*, 310 U.S. 469, 492-93 (1940), and *Four Corners Nephrology Assoc. v. Mercy Med. Ctr. of Durango*, 582 F.3d 1216, 1225 (10th Cir. 2009)).

"provide for sanctions against inmates who are allowed to file claims against public defendants and whose claims are dismissed as frivolous."  Colo. Rev. Stat. § 13-17.5-101(2).  Section 102.7 of this statute provides:

> No inmate who on three or more occasions has brought a civil action based upon prison conditions that has been dismissed on the grounds that it was frivolous, groundless, or malicious or failed to state a claim upon which relief may be granted or sought monetary relief from a defendant who is immune from such relief, shall be permitted to proceed as a poor person in a civil action based upon prison conditions under any statute or constitutional provision.

Colo. Rev. Stat. § 13-17.5-102.7(1).  "Civil action" is defined as the filing of any complaint, petition, writ, or motion "with any court within the state."  Colo. Rev. Stat. § 13-17.5-102(1).

Defendants have cited no authority demonstrating that a federal court has authority to issue a "strike" under this section, which could impact Mr. Oakley's ability to seek legal relief *in forma pauperis* in Colorado state court, and the court could locate no case in which a court in this District entered such a "strike."  As recently as 2020, the Colorado Court of Appeals declined to pass on whether "a lawsuit initiated in federal district court in Colorado is considered a 'civil action' that was filed 'within the state,' as that term is defined in section 13-17.5-102(1)."  *Rueb v. Rich-Fredericks*, 486 P.3d 435, 438 n.3 (Colo. App. 2020).  Absent any legal authority demonstrating that this court has authority to grant the requested relief, the court declines to recommend that the presiding judge issue a "strike" against Mr. Oakley in this case, leaving it to a future Colorado state court to determine whether this court's judgment constitutes a "strike."[16]

---

[16] Defendants do not argue that a "strike" is appropriate under the federal equivalent of § 102.7, 28 U.S.C. § 1915(g).  *See* [Doc. 18].

However, due to the number of cases that Mr. Oakley has filed in this District and the overlapping allegations therein, this court respectfully **RECOMMENDS** that Plaintiff not be afforded leave to amend at this juncture, but rather be required to move the court for leave to amend with a proposed amended pleading should he wish to continue this action.[17]

## CONCLUSION

For the reasons set forth herein, this court respectfully **RECOMMENDS** that:

(1)    The Motion to Dismiss Complaint Under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) [Doc. 18] be **GRANTED**;

(2)    Plaintiff's procedural due process claim be **DISMISSED without prejudice** as to all Defendants;

(3)    Plaintiff's substantive due process claim be **DISMISSED without prejudice** as to all Defendants; and

(4)    Plaintiff's Sherman Act claim be **DISMISSED with prejudice** as to all Defendants.[18]

---

[17] In *Oakley IV*, Civil Action No. 20-cv-01336-CMA-NYW, Judge Arguello adopted this court's Recommendation for dismissal and provided Plaintiff 30 days to file an Amended Complaint. [ECF No. 78]. Mr. Oakley then moved for a fourteen-day extension of time to file a notice of appeal, which was granted. [ECF No. 79; 81]. However, Mr. Oakley neither filed a Notice of Appeal nor an Amended Complaint. Accordingly, it appears that the earlier case, Civil Action No. 20-cv-01336-CMA-NYW, can be terminated at this time.

[18] Within fourteen days after service of a copy of this Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings of fact, legal conclusions, and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Griego v. Padilla (In re Griego)*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review." *United States v. 2121 E. 30th Street*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings of fact, legal conclusions, and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings of fact, legal conclusions, and

In addition, it is **ORDERED** that:

(1)    A copy of this Recommendation, marked as legal mail, shall be sent to the following:

Jacob D. Oakley, #123294
Centennial Correctional Facility (CCF)
P.O. Box 600
Canon City, CO 81215

and

Case Manager for Jacob D. Oakley, #123294
Centennial Correctional Facility (CCF)
P.O. Box 600
Canon City, CO 81215

DATED:  January 28, 2022        BY THE COURT:

Nina Y. Wang
United States Magistrate Judge

---

recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (holding that the district court's decision to review magistrate judge's recommendation *de novo* despite lack of an objection does not preclude application of "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc*., 52 F.3d 901, 904 (10th Cir. 1995) (finding that cross-claimant waived right to appeal certain portions of magistrate judge's order by failing to object to those portions); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (finding that plaintiffs waived their right to appeal the magistrate judge's ruling by failing to file objections). *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (holding that firm waiver rule does not apply when the interests of justice require review).